**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAMONA BRACY** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-3825** |
| | : | |
| **MACY'S RETAIL HOLDINGS, INC.,** | : | |
| ***et al.*** | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                          APRIL 23, 2020

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a motion to compel arbitration filed by Defendants Macy's Retail Holdings, Inc. and Macy's Inc. (collectively, "Defendants" or "Macy's"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14.  [ECF 8].  Plaintiff Ramona Bracy ("Plaintiff") has opposed the motion. [ECF 10].  The issues raised by the parties have been fully briefed and are ripe for disposition.[1]  For the reasons set forth below, Defendants' motion to compel arbitration is granted.

## BACKGROUND

In the amended complaint, Plaintiff asserts claims against Defendants for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq*. Defendants move to compel arbitration of these claims pursuant to an arbitration agreement contained in various written materials that were originally provided to Plaintiff in 2006.  In her amended complaint and in her opposition to Defendants' motion to compel arbitration, Plaintiff asserts that she "does not recall ever agreeing" to the arbitration agreement and, therefore, argues

---

[1]       In adjudicating the underlying motion, this Court has also considered Defendants' reply. [ECF 13].

that she is not bound by said agreement.  The facts relevant to the validity and enforceability of the arbitration agreement are set forth below.[2]

In 2003, Macy's, Inc., then known as Federated Department Stores, Inc., and the parent company of Macy's Retail Holdings, Inc., developed and implemented an early dispute resolution program for its employees called Solutions InSTORE (the "Arbitration Program").  In 2006, after its acquisition of The May Department Stores Company, Macy's rolled out the Arbitration Program to all of its non-union, former May Company employees ("Legacy Employees"), including Plaintiff, who continued their employment with Macy's.  For Legacy Employees, including Plaintiff, the Arbitration Program became effective January 1, 2007.

The Arbitration Program was introduced to Legacy Employees in the Fall of 2006 through informational meetings held in individual department stores. These meetings included a presentation by a Macy's representative about the Arbitration Program, a video explaining the Arbitration Program, and the distribution of a letter from Macy's then-Chief Executive Officer Terry J. Lundgren and a brochure titled "Welcome to Solutions InSTORE."  The brochure, *inter alia*, advised employees that they would have two opportunities to decide whether to accept or opt out of the Arbitration Program.

Through the sworn declaration of Cynthia Ripak, Defendants' custodian of records with respect to the Arbitration Program, Defendants introduced a sign-in sheet for the informational meeting held at Plaintiff's store,  titled "Solutions InSTORE Meeting Attendance Sign-In Sheet."  The top of this sign-in sheet included the following language: "Please sign and date this roster so that we know you attended the informational meeting about Solutions InSTORE, the Company's early Dispute Resolution Program."  In her deposition, Plaintiff admits that she signed this sign-in sheet, but contends that she did not actually attend the informational session.  She further testified that it is "possible" that she received a copy of the Lundgren letter and Arbitration Program brochure, but that she "do[esn't] believe that [she] received them."

On September 20, 2006, Macy's sent an package to Plaintiff's home that included:  (1) a "Welcome to Solutions InSTORE" postcard; (2) the Arbitration Program plan document ("Plan Document"); (3) a personalized, opt-out Election Form; and (4) a pre-addressed, postage pre-paid envelope that she could use if she decided to complete and return her opt-out Election Form.  The Plan Document,

---

[2]     The facts set forth herein are drawn from the amended complaint and the exhibits attached to the parties' briefs, including the sworn declaration of Cynthia Ripak, Defendants' custodian of records for Defendants' arbitration program, and the transcript of Plaintiff's deposition.  For the purposes of this motion, this Court will construe the facts and evidence in the light most favorable to the non-movant—here, Plaintiff.

which includes the relevant arbitration agreement, provided in relevant part, the following:

> "All Associates are automatically covered by all 4 steps of the program by taking or continuing a job with the Company. That means that all Associates agree, as a condition of employment, to arbitrate any and all disputes, including statutory and other claims, not resolved at Step 3. However, Arbitration is a voluntary condition of employment. Associates are given the option of excluding themselves from Step 4 arbitration within a prescribed time frame. Issues at Step 4 are decided by a professional from the American Arbitration Association in an arbitration process, rather than in a court process. Arbitration thus replaces any right you might have to go to court and try your claims before a jury. You are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration. Whether you choose to remain covered by arbitration or to exclude yourself has no negative effect on your employment."

The enclosed documentation further advised that if Plaintiff decided not to participate in the Arbitration Program, she needed to complete the Election Form and return it before October 31, 2006. Plaintiff did not complete or return the opt-out Election Form. In April 2007, Macy's mailed Plaintiff a brochure welcoming her to the Arbitration Program. Plaintiff testified that she "does not recall" receiving either the Fall 2006 or April 2007 mailing. Defendants' custodian of records, Ripak, confirmed that the Arbitration Program package and welcoming brochure were mailed to Plaintiff's address and were not returned as undeliverable.

In March 2007, Plaintiff transferred from the King of Prussia store to the Springfield store to become an Office Manager. Shortly thereafter, Plaintiff signed an Associate Acknowledgement regarding Macy's employee handbook. The acknowledgement read:

> "I acknowledge that I have received the Macy's Associate Guide. I understand that it is my responsibility to read the contents and to comply with all Company policies, procedures and rules. I understand that it is my responsibility to discuss with my manager or a Human Resources manager any questions that I may have."

Plaintiff concedes that she received and reviewed (though not in detail) a copy of the Associate Guide. The Associate Guide includes a section titled "Resolving Disputes" that explains the Arbitration Program. The Associate Guide also provides:

> "You should have received detailed information describing the [Arbitration P]rogram. If you need more information or are interested in receiving a Plan Document, please ask Human

3

Resources or visit the Solutions InSTORE website at www.employeeconnection.net/solutionsinstore, or call the Office of Solutions InSTORE at 1.866.285.6689."

Plaintiff does not recall reviewing this section of the Associate Guide.

After Plaintiff transferred to the Springfield store, she recalled seeing a poster "hanging up in the store" regarding the Solutions InSTORE Program. Based on review of the poster, Plaintiff concluded that Solutions InSTORE was "a phone number that you call. If you feel like you can't go to someone within your store, then you call this number. Or if you feel like someone in your store did not, um, satisfy your need then, you call the Solutions InSTORE number."

In October 2007, Macy's provided Plaintiff another opportunity to opt out of the Arbitration Program. Specifically, Macy's sent Plaintiff a package that contained: (1) a brochure titled "We've Got You Covered;" (2) a newsletter titled "Opening the Door to More Information;" (3) a personalized opt-out Election Form; and (4) a pre-addressed, postage-paid envelope. Like the September 2006 package, this package included a description of the Arbitration Program and instructed Plaintiff that if she no longer wished to participate in the Arbitration Program, she must complete and return the enclosed Election Form by November 15, 2007. Plaintiff testified that she "does not recall" receiving the Fall 2007 mailing. Defendants' custodian of records, Ripak, confirmed that the package was mailed to Plaintiff's address and not returned as undeliverable.

## LEGAL STANDARD

When addressing a motion to compel arbitration, the Court must first determine which standard of review to apply: either the motion to dismiss standard under Federal Rule of Civil Procedure ("Rule") 12, or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resolution, LLC.*, 716 F.3d 764, 771-72 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74 (internal citations omitted). Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard." *Id*. Here, though the issue of arbitrability is apparent on the face of the amended complaint, Plaintiff challenges the validity and enforceability

of the Arbitration Program on the basis of her alleged lack of recollection to receiving the Arbitration Program materials.  When such a challenge is made, a motion to compel arbitration is properly reviewed under the motion for summary judgment standard.  *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co. Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).  Thus, this Court finds that the Rule 56 summary judgment standard is applicable to determining the validity and enforceability of the Arbitration Program at issue.[3]

When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In applying a Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772.

The moving party has the burden of showing the court "the absence of a genuine issue of material fact" by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322-23. The non-moving party must then rebut the claim by "citing to particular parts of materials in the record, including, depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A-B).  The non-moving party must show more than "some metaphysical doubt as to

---

[3]       The parties have participated in and have exchanged some discovery, including Plaintiff's deposition, such that the Court has a sufficient factual record regarding the issue of arbitration.  Therefore, no additional discovery is necessary.

the material facts," rather, the non-moving party must "go beyond the pleadings" and "show that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324.

**DISCUSSION**

As noted, Defendants move to compel the arbitration of this matter based on the Arbitration Program, to which they contend Plaintiff agreed. In opposing the motion, Plaintiff argues only that Defendants have failed to establish that she received and agreed to the terms of the Arbitration Program. In light of the undisputed record evidence, this Court is not persuaded by Plaintiff's arguments.

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). The primary substantive provision of the FAA (Section 2) provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Further, § 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted).

Under the FAA:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* In so doing, the court "must resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Therefore, before compelling arbitration, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).[4] Throughout the inquiry, there is a presumption in favor of arbitrability. *Id.* In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Under Pennsylvania law (applicable here), "a contract is formed when there is an offer, an acceptance of that offer and an exchange of consideration." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 494 n.21 (Pa. 2004).

### *Formation of the Arbitration Agreement*

Plaintiff argues that Defendants have failed to present sufficient evidence to show that she entered into the purported agreement to arbitrate. Specifically, Plaintiff contends that Defendants have failed to provide evidence that any of the materials containing the  governing terms of the

---

[4]     Plaintiff does not argue that her underlying claims fall outside the scope of the Arbitration Program. Indeed, Plaintiff's employment discrimination claims fall within in the scope of the Arbitration Program.

Arbitration Program were provided to her or that she accepted the terms thereof. Plaintiff's argument is belied by the record, which affirmatively demonstrates the requisite offer, acceptance, and consideration underlying the Arbitration Program.

### 1. Defendants' Offer of the Arbitration Program

Pennsylvania courts have "defined an offer as 'a manifestation of a willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Beaver Valley Alloy Foundry Co. v. Therma-Fab, Inc.*, 814 A.2d 217, 222 (Pa. Super. Ct. 2002) (quoting *O'Brien v. Nationwide Mut. Ins. Co.*, 689 A.2d 254 (Pa. Super. Ct. 1997) and Restatement (Second) of Contracts, 24)). "An offer must be intentional, definite in its terms and communicated, otherwise the minds cannot meet." *Morosetti v. Louisiana Land & Exploration Co.*, 522 Pa. 492, 494 (Pa. 1989). "In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms." *Bauer v. Pottsville Area Emergency Med. Servs., Inc.*, 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000). Applying Pennsylvania law, numerous courts in this district have held that an employer's distribution of an arbitration policy to existing at-will employees—as part of an employee handbook or as a freestanding document—constitutes an offer of continued employment, subject to the terms of the arbitration program. *See*, *e.g.*, *Alexander v. Raymours Furniture Co.*, 2014 WL 3952944, at *5 (E.D. Pa. Aug. 13, 2014); *Grant v. Phila. Eagles, LLC*, 2009 WL 1845231, at * 4 (E.D. Pa. June 24, 2009); *Gutman v. Baldwin Corp.*, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002); *Hamilton v. Travelers Prop. & Cas. Corp.*, 2001 WL 503387, at * 2 (E.D. Pa. May 11, 2001); *Wilson v. Darden Rests., Inc.*, 2000 WL 150872, at *3–4 (E.D. Pa. Feb. 11, 2000); *Venuto v. Ins. Co. of N. Am.*, 1998 WL 414723, at *5–6 (E.D. Pa. July 22, 1998); *cf. Brennan v. CIGNA Corp.*, 282 F. App'x 132, 135–36 (3d Cir. 2008) (holding

that a valid arbitration agreement existed where employer distributed an arbitration policy to employees, which made binding arbitration a term and condition of employment).

To establish that a valid offer was made, Defendants provided the sworn declaration of Cynthia Ripak, Manager of the Office of Solutions InSTORE and custodian of records for the Arbitration Program.  Based on her review of Defendants' business records, she attested that Plaintiff attended a store meeting in the Fall of 2006 at which the Arbitration Program was introduced and explained.  Plaintiff's attendance at this meeting is evidenced by Plaintiff's signature on the corresponding sign-in sheet.  Though Plaintiff contends that she did not actually attend this session, she concedes that she signed the sign-in sheet, the purpose of which was clearly to record her attendance at the meeting.  Ripak also attested that the governing Plan Document and informational materials explaining the Arbitration Program were mailed to Plaintiff on multiple occasions; *to wit*:  in September 2006, April 2007, and October 2007.  As noted, the mailed materials explained the Arbitration Program and advised Plaintiff on how to opt out of the program, if she so desired.

This Court finds that the mailed materials constituted Defendants' offer to Plaintiff to enter into the Arbitration Program.  Though Plaintiff "did not recall" receiving these materials when she testified fourteen years later, Defendants' business records establish otherwise; Defendants provided unrebutted evidence that the materials were mailed to Plaintiff and were not returned as undeliverable.  Thus,  Defendants are entitled to a presumption that they were, in fact, received by Plaintiff.  *See Samaras v. Hartwick*, 698 A.2d 71, 73 (Pa. Super. Ct. 1997) ("it has long been the law of our Commonwealth that 'proof of a mailing raises a rebuttable presumption that the mailed item was received and it is well-established that the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed."); *Gedid v. Huntington Nat'l Bank*, 2012 WL 691637, at *6 (W.D. Pa. Feb. 10, 2012); *Bell v. Allstate Ins. Co.*, (E.D. Pa. May

31, 2005).   Moreover, Plaintiff, as the party seeking to avoid arbitration, bears the burden of proving invalidity of the arbitration agreement.   *Comrey v. Discover Fin. Serv., Inc.*, 806 F. Supp. 2d 778, 783 (M.D. Pa. 2011) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)). Mere denial is insufficient to rebut the presumption of receipt.   *Comrey*, 806 F. Supp. 2d at 783 (citing *Discover Bank v. Vaden*, 489 F.3d 594, 607 (4th Cir. 2007)).   "Once this presumption is established, the party alleging that it did not receive the letter has the burden of establishing such, and merely asserting that the letter was not received, without corroboration, is insufficient to overcome the presumption of receipt."   *Geise*, 939 A.2d at 423 (quoting *Donegal Mut. Ins. Co. v. Ins. Dept.*, 719 A.2d 825, 827 (Pa. Commw. Ct. 1998)).

Besides her bald contention that she did not "recall" receiving these materials, Plaintiff does not provide any evidence to show that she did not receive the Arbitration Program documents. To the contrary, Plaintiff concedes that she signed the sign-in sheet, the purpose of which was to record her attendance at the Arbitration Program informational meeting.   She also concedes signing an acknowledgement confirming her receipt and review of the Macy's Associate Guide, which included a description of the Arbitration Program.   In light of these concessions and Defendants' unrebutted documentary evidence that the Arbitration Program materials were provided to Plaintiff on multiple occasions, Defendants have demonstrated that they made a valid offer.

### 2.   *Plaintiff's Acceptance of the Arbitration Program*

Defendants' offer to Plaintiff, conveyed by the Arbitration Program materials, explained that by continuing employment and not returning the opt-out Election Form, Plaintiff was agreeing to be covered by the Arbitration Program.   It is undisputed that Plaintiff continued her employment with Defendants and did not return the opt-out Election Form.

In Pennsylvania, it is well-established that continued employment *alone*, under these circumstances, can constitute acceptance of an arbitration agreement.  In *Lepera v. ITT Corp.*, 1997 WL 535165 (E.D. Pa. Aug. 12, 1997), the employer offered an arbitration agreement to its employees during the plaintiff's employment.  *Id.* at *4.  In finding the arbitration agreement enforceable, the court explained that continuing to work for the employer constituted acceptance of the employer's offer to arbitrate:

> This court finds that Lepera clearly agreed to arbitrate his disputes with ITT.  Lepera clearly and unequivocally continued to work after receipt of the Policy and explanatory memorandum; he did not vacillate between working and not working. The Policy and accompanying memorandum set forth in unambiguous terms that Lepera was agreeing to arbitrate by continuing to work, and Lepera received and read those documents.

*Id.*; *see also Grant*, 2009 WL 1845231, at *4 (stating it "has not hesitated to find an enforceable agreement to arbitration, where, as here, an arbitration policy is instituted during an employee's employment and the employee continues to work for the employer thereafter." ); *Wilson*, 2000 WL 150872, at *4 (finding an employee's intent to be bound to employer's unilaterally-imposed arbitration policy evidenced by his continued employment after receiving policy); *Venuto*, 1998 WL 414723, at *5 (holding that an at-will employee accepted employer's unilaterally instituted arbitration policy where employee was notified of the policy and continued to work thereafter).

Plaintiff's contention that she does "not recall" having received the arbitration agreement does not alter the outcome here.  Numerous courts have held that a plaintiff's lack of recollection does not create a genuine issue of disputed fact.  *See, e.g.*, *Keller v. Pfizer, Inc.*, 2018 WL 5841865, at *3 (M.D. Pa. Nov. 8, 2018) (rejecting plaintiff's arguments that she should not be bound by an arbitration agreement because she did not recall entering into the agreement); *Black v. JP Morgan Chase & Co.*, 2011 WL 3940236, at *5 (W.D. Pa. Aug. 25, 2011) (holding that a plaintiff's testimony that she did not recall receiving arbitration agreement did not create a genuine issue of

fact as to whether plaintiff chose not to opt out); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002) (holding that plaintiff's averment in her affidavit that she did not recall seeing or reviewing the arbitration program brochure that was allegedly included with her payroll check did not raise a genuine issue of fact as to whether the brochure was distributed to her, where the record also contained uncontroverted affidavits from defendant indicating that the brochure was definitely sent and presumably received with her paycheck); *I.V. Servs. of America, Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 55 (1st Cir. 1999);  (holding that plaintiff's "mere lack of recollection does not suffice to create an issue of fact over whether or not she received a Plan copy.").

Here, Plaintiff manifested her intent to be bound by the terms of the Arbitration Program by not returning the opt-out election form on two separate occasions and by continuing to work for Defendants.  In light of Defendants' unrebutted evidence that they distributed the Arbitration Program materials to Plaintiff, her testimony that she did "not recall" receiving the materials does not create a genuine issue of material fact.  Under these circumstances, this Court finds that Plaintiff accepted Defendants' offer to enter into the Arbitration Program.

### 3. *Consideration*

Under Pennsylvania law, continued employment after receiving notice of an arbitration policy is sufficient to establish acceptance of, as well as consideration for, an arbitration agreement. *See Blair v. Scott Specialty Gases*, 283 F.3d 95, 604 n.3 (3d Cir. 2002) (continued employment can serve as consideration to support an arbitration clause and render it enforceable); *Alexander*, 2014 WL 3952944, at *5 (stating that the "weight of authority" in Pennsylvania finds adequate consideration to support an arbitration agreement where the employee continued to work for the employer after receiving the arbitration agreement); *Wilson*, 2000 WL 150872, at *4 (holding that an employee's continued employment "is sufficient to constitute both acceptance of the Company's offer as well as consideration for an enforceable arbitration agreement.");

*Hamilton*, 2001 WL 503387, at *2 (holding that continued employment after employee's receipt of employee handbook containing arbitration agreement was sufficient to constitute acceptance and consideration).  As described above, it is undisputed that Plaintiff continued to work for Defendants after receiving the Arbitration Program materials.  Plaintiff's continued employment constitutes valid consideration.

In sum, Defendants have presented unrebutted evidence of the offer, acceptance, and consideration for a validly formed agreement to the underlying Arbitration Program.  Plaintiff's mere lack of recall as to her receipt of the Arbitration Program materials is insufficient to create a genuine issue of material fact as to the formation and validity of the agreement to arbitrate. Plaintiff is, therefore, bound by the terms of the Arbitration Program.  Accordingly, Defendants' motion to compel arbitration of this matter is granted.

**CONCLUSION**

For the reasons stated herein, Defendants' motion to compel arbitration is granted. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, J.